A. G. SCOGIN v. S. R. PERRY AND THE SOUTHERN PACIFIC RAILROAD COMPANY.

1—Of two judgments in the same county and against the same defendant, rendered while the act of February 14th, 1860, was in force, the younger one, if recorded so as to create and preserve a lien, would, to the exclusion of the elder and unrecorded one, be entitled to the proceeds of real estate within the county, sold as the property of the defendant, notwithstanding that execution from the elder judgment was sued out and levied before the issuance and levy of execution from the younger one.

2—It seems that the phrases "real estate" and "title in fee simple to real estate" are synonymous and convertible terms in the law of Texas; and that no one can be the owner of "land" or "real estate" unless he has title to it in fee simple.

3—In view of statutory provisions contained in articles 4930 and 4912, Paschal's Digest, railroads are not "real estate" in Texas. *Held*, therefore, that judgments, whether recorded or not, operated no lien on the railroad of the Southern Pacific Railroad Company, against which they were rendered; and that the execution first levied was entitled to the proceeds resulting from the sale of the road.

4—It seems that by force of the act of November 9th, 1866, a judgment of a court of record of this State will not become dormant in less than ten years, although no execution be issued on it. This act repeals article 4608 of Paschal's Digest, so far as they are inconsistent.

APPEAL from Harrison. Tried below before the Hon. J. B. Williamson

For all practical purposes, the opinion of the court contains a sufficient statement of the facts of the case, so that there seems to be no occasion to detail the particulars of the twenty-

seven judgments against the railroad company which were involved in the proceedings below.

*Poag & McKay* and *S. P. Donley*, for the appellant.

The court erred in overruling appellant's exceptions to pleas of intervention. Said pleas do not alledge that the property was the proceeds of real estate encumbered by judgment lien of former judgment, and set up no other right in them under the law to claim the same. If the property was personal, it is clear they had no claims to the money. (See 17 Texas, p. 209.) Appellant's execution came into the hands of the sheriff on the 11th of March, 1868, and was levied on the same day. The execution of the appellees came into the hands of the sheriff on the 13th of the same month, and levied the same day. So appellant had, by virtue of the levy of his execution, a lien on the property before the other executions came into the hands of the sheriff. (See 17 Texas, p. 209.)

Did the judgment in favor of appellees operate as a lien on the property levied on and sold? There is no doubt of the proposition if the property be real estate in the county of Harrison, where the judgments were rendered; and if the result of this appeal rested alone upon this proposition, an affirmative determination of the same would warrant an affirmance of the judgment. The appellant took no sufficient steps for his judgment to attach as a lien upon real estate.

It is submitted by appellant, that the road bed, track, franchise, and chartered rights and privileges of said railroad company are not real estate, nor subject to judgment lien.

Article 3963, Paschal's Digest, after the declaring that no judgment shall operate as a lien until filed in the office of the county clerk, and prescribing the duties of the clerk with reference to the same, etc., provides, "and the judgment so recorded shall operate as a lien on all the real estate of the defendants situated in the county in which the same may be

rendered." The other provisions of said statute affect the question in no wise, and the above extract is here made to call the attention of the court to the terms used in the statute.

To ascertain the character of the property embraced in the terms of the statute, we must resort to that law which is the basis of our jurisprudence.

In many of the States the term "real estate" is defined, and its signification fixed by statute. Our statutes have not done so, hence the necessity of looking to other sources for definitions.

"The term real estate means an estate in fee or for life in land, and does not comprehend terms for years, or any interest short of a freehold." (See Kent's Com., vol. 3, top page 492.) Many other authorities might be cited, but the above is deemed sufficient.

Article 999, Paschal's Digest, makes every estate in lands which shall hereafter be granted, etc., be deemed a fee simple, if a less estate be not limited by express words, etc. If the company had such an interest in the property, or the land upon which the same was superstructed, then it was real estate, and subject to appellees' judgment lien. If there was not such an interest, it was not "real estate." An estate for years in land is personal property. So is every other estate less than freehold. (See 1 Hilliard on Real Property, pp. 3 and 7.) And if not real estate, such lien did not attach. But for the provisions of the statute of February 8th, 1860, tenth section, amended February 7th, 1861, article 4939, Paschal's Digest, the property might be, and doubtless would be, embraced within the scope of the definition of the term "real estate," heretofore given. Article 4930, Paschal's Digest, declares that the right of way secured, or to be secured, to any railroad company in this State in the manner provided by law, shall not be so construed as to include the fee simple estate in lands, either public or private, nor shall the same be lost by the forfeiture or expiration of the charter, but shall remain, subject to an

extension of the charter, or the grant of a new charter over the way, without other condemnation. Such railroad companies can avail themselves of the privileges secured to them by their charter, so far as the appropriation of the use of private lands are concerned, in two ways: first, by contract with owners; and second, by impressment through the intervention of commissioners appointed by the County Court, or chosen by the parties. (See Paschal's Digest, 4922.) The company only contracts for the use of the real estate of the owners; or when the company is driven to the necessity of condemnation, it is only such use of the real estate of the owners that can be awarded by the commissioners. (See authority last cited.) And such use extends over such portions of the lands of the owners thereof as will be sufficient for the construction of the railroad, which extent is generally fixed by the terms of their respective charters, and to such extent only can the condemnation extend. Article 4912, Paschal's Digest, provides that the road bed, track, franchise and chartered rights and privileges of any railroad company in this State shall be subject to the payment of the debts and legal liabilities of said company, and may be sold in satisfaction of the same; but the said road bed, track, franchises and chartered privileges shall be deemed an entire thing, and must be sold as such. Article 4914, Paschal's Digest, provides that whenever judgment is rendered against any railroad company the plaintiff may have execution directed to the sheriff of the county of the domicile of the company, and have the same levied on said road bed, track, etc., which levy shall be held to embrace the whole road bed and track, and the entire line of said railroad, whether situated in the same county or not; and the same shall be advertised and sold at the courthouse of said county, as in other cases, making the same advertisement as is provided by law in cases of the sale of land. From all of which statutes it clearly appears to be the intention of the Legislature to divest the road bed, track, etc., as an entire thing, of the character of real estate.

If, then, real estate consists in an estate in fee, or for life, and comprehends neither terms for years or any interest short of a freehold, then, tried by our statute, such an interest is expressly prohibited from passing to any railroad company, for the single thing consisting of the road bed, track, etc., can not be real estate, but personal property. And if personal property, it was not encumbered by judgment lien. We are borne out in this conclusion by other considerations. Judgments attach as a lien upon all real estate in the county where the judgment was rendered. This single thing, the road bed, track, etc., extends through every county in the State from Red River to the Rio Grande; so we have a lien of a judgment of one county encumbering real estate in twenty counties, which is certainly not authorized by law, unless there be a record of such judgment in said counties.

On the other hand, how could the lien be enforced if restricted to the limits of one county, as provided by the statute?

Could you sell that portion of the thing, the road bed, track, etc., lying in one county, in another. The law prohibits that. That would make the franchise divisible, which is impossible. The thing must be sold as a whole, which presents another insurmountable difficulty. You would, by virtue of an execution from a court of Harrison county, levy upon and sell, before the courthouse door of Harrison county, real estate situated in Bexar county. The statute would not authorize such sale.

Then, if this be not real estate, the law governing execution, levy and sale of personal property must control this case. Appellant's execution was received by the sheriff on the 11th of March, 1868, and levied the same day, which operates as a lien on said property from the time of the levy, and was such lien in favor of appellant before the execution of appellees came into the hands of the sheriff, on the 13th of March. Wherefore the proceeds of said sale should have been paid

over immediately to appellent to the full extent of his execution. (See Mercein v. Butler, 17 Texas, p. 209.)

*M. J. Hall* and *J. W. Pope*, for appellees.

It was the duty of the sheriff to pay over the money to the parties having liens on the property, who were the owners of the recorded judgments. (Lawrence v. Turner, 11 Ala., 426; Greenwood v. Broquet, 2 Bay, 86; Craig v. Lebrell, 9 Grattan, 131; Rankin v. Scott, 12 Wheaton, 177; Oves v. Ogelvie, 7 Watts, 106.)

That the levy made in 1860 was a lien there can be no doubt. (Butts v. Chinn, 4 J. J. Marshall, 641; Mercein v. Butler, 17 Texas, 206; McMiller v. Butler, 20 Texas, 404; Branch v. Lowry, Galveston Term, 1868.)

It will probably be insisted that the railroad, its property and franchises, are personal property, and that therefore the oldest levy was entitled to the money. Such a proposition seems to be so much at war with all the doctrine taught us by the brightest lights in the English and American judiciary that it is scarcely necessary to argue it seriously. " Real property is of a permanent and immovable nature, and the owner has an estate therein at least for life." (2 Bouv. Law Dic., p. 423, sec. 5; 2 Kent's Comin., 341; 13 Law Library, 7; Purd. Dig., 964.)

Personal property consists of things temporary and movable, (Bouv. Law Dic., p. 333,) or, as Sir William Blackstone says, personal property is of a movable nature, such as may accompany the person wherever he goes. What can be more permanent, fixed and immovable than a railroad track? The road bed is a part of the earth, the crossties are imbedded in the earth, and the iron is nailed to them. The rolling stock is a part of the road and immovable.

By an act of the Legislature of 1861 (sec. 4930, Paschal, p. 824,) it is provided that the right of way secured, or to be secured, to a railroad company, shall not be so construed as to

include the fee simple, and it is argued from this statute by the appellant, that a railroad is personal property, and if personal property a judgment lien did not bind it, and the first levy would hold the property.

It may be true that the right of way of a railroad is not a fee simple estate, but it does not follow that it is not real estate. A fee simple estate is the highest estate known to the law, but there are many other kinds of estates of less grade, yet they are estates.

An estate of freehold is a less estate, and it may be an estate of inheritance or an estate for life only. (4 Kent, p. 24.) A qualified, base or determinable fee is an interest which may continue forever, but the estate is liable to be determined without the aid of a conveyance by some act or event circumscribing its continuance or extent. (4 Kent, p. 9.)

In a suit between the Minnesota Railroad Company v. St. Paul Company, 2 Wallace, Sup. Ct., p. 609, the question arose whether the rolling stock of a railroad was real or personal property, and it was decided to be a part of the road and real estate. The case was ably and learnedly discussed by both counsel and court, but no mention is made of the road itself as personalty. It seemed to be taken for granted that it was real estate. The English and American authorities are fully reviewed to show that rolling stock was a fixture, and as such attached to and constituted a part of the freehold. See authorities on the subject. (2 Wallace, p. 645–648.)

MORRILL, C. J.—The questions arising in this case have reference to the priority of rights of different parties, to the proceeds of a sale based upon different judgments and different executions, rendered and executed at different periods of time.

Scogin's judgment was rendered in the District Court on the 24th day of October, 1866, and was not recorded.

Other judgments were rendered in 1866, and were recorded in 1866.

Scogin's execution was issued on the 11th day of March, 1868, and was placed in the hands of the sheriff on the 11th day of March, 1868, and levied same day.

The execution of other parties was issued in April, and levied, on the same property, on the — day of April, 1868.

The property was sold by virtue of all the judgments and executions; the sheriff returned the proceeds of the sale into court, requesting the judgment of the court as to the application of the money to the different claimants. The District Judge decided adversely to Scogin's claim, and the legality of the decision is the question for our adjudication.

Previous to the 14th day of February, 1860, a judgment in a court of record operated as a lien on all the real estate of the judgment debtor, situate in the county in which the judgment was rendered, for the payment thereof.

On the 14th day of February, 1860, the Legislature passed an act (Arts. 3962–3965) requiring judgments to be recorded in the office of the clerk of the County Court, in order to create and preserve a lien, renewable every four years.

On the 9th of November, 1866, the Legislature repealed this act and re-enacted the statute making the rendition of a judgment of a court of record a lien on all the real estate of the judgment debtor, situate in the county where the judgment was rendered.

Since the plaintiff did not record his judgment it did not operate as a lien, and since the intervenors did record their judgments, and thus acquire and preserve the lien on all the real estate of the Pacific Railroad Company in the county of Harrison, they are to be preferred to plaintiff, provided the property sold was real estate—and this is the most important question in the case.

"By the Common Law of England, property is divided into two kinds, namely, real and personal property. Real property consists of land, and of all rights and profits arising from, and annexed to land, that are of a permanent and immovable

nature, and is comprehended under the words, lands, tenements and hereditaments." (1 Cruise, Title 1, § 1.)

The statutes of Texas are in accordance with the Common Law of England, and were so before the introduction of the "Common Law of England as a rule of decision." The act of the 26th of January, 1839, (Paschal, Art. 1286,) provides that "Whenever final judgment shall be rendered by any court of record of this republic, it shall operate as a lien upon the lands of the defendant, from the day of the date of the judgment and execution; shall operate as a lien upon the personal property and slaves, from the day on which it issues."

Since the only title that the owners of real estate in Texas have is a fee simple; and, conversely, those who have the fee simple title, and those only, are the owners of the land, it would follow that real estate and a title in fee simple to real estate, are convertible terms: and it would also seem that one may have an exclusive right to walk or ride over the tract of land of another, without possessing the real estate therein.

The act of the 7th of February, 1861, (Art. 4930,) provides that "the right of way, secured or to be secured to any railroad company in this State, in the manner provided by law, shall not be so construed as to include the fee simple estate in lands, either public or private. While in some of the United States it has been considered that, by the common law, shares in tollbridge, canal and turnpike corporations are real estate, latterly it has been thought that railway shares were more properly to be regarded as personal estate. (1 Cruise, 40.)

Redfield, in his work on railways, page 124, says: "Questions have sometimes arisen in regard to the precise title acquired by a railway company in lands purchased by them, where the conveyance is a *fee simple.* It is certain in this country, upon the principle that a railway company, by virtue of their compulsory powers in taking lands, could acquire no absolute fee simple, but only the right to use the land for their purposes; and it is very questionable whether a railway, in

such case, is entitled to the herbage growing upon the land, or to cultivate the same, or to dig for stone or minerals in the land, beyond what is necessary for their powers of construction.

The statutes (Art. 4912,) regard "the road-bed, track, franchise, and chartered rights and privileges one entire thing, and when a forced sale is made thereof it includes the entire line of the railroad whether in the same county or not."

We are led to conclude, from the foregoing extracts, that a railroad is not real estate, in the sense contemplated by the statute, and that a judgment, whether recorded or not, did not operate as a lien thereon. A levy, therefore, made by virtue of a proper execution founded upon a valid judgment, would create the first lien; and, when a sale of the road should be effected, the proceeds of the sale would be applied to the payment of this execution, in preference to others subsequently received.

But the appellees insist that as more than one year had elapsed after the rendition of the judgment before the execution was issued, the judgment had become dormant and should have been revived before an execution could issue thereon.

The statute of the 9th of November, 1866, page 119, says: "No judgment of a court of record shall become dormant unless ten years shall have elapsed between the issuance of executions thereon."

This is as sweeping a provision as can be conceived. There is only one way in which a judgment can become dormant, which is a lapse of ten years after an execution. Tested by this rule the judgment could not be dormant, because only sixteen months had elapsed after the rendition of the judgment before the issuance of the execution.

I am aware that the general law of limitations, (Art. 4608,) provides, that "Judgments in any court of record within this republic, where execution hath not issued within twelve months after the rendition of the judgment, may be revived by *scire facias* or action of debt brought thereon within ten years next

after the date of such judgment, and not after." Though this does not directly declare a judgment to be dormant if execution be not issued in one year, yet it is implied, and the profession have generally treated it as a positive law. But the act of 1866, above referred to, contains no implications, but is mandatory, and repeals all acts and parts of acts in contravention thereof. The judgment is reversed and reformed.

Reversed and reformed.