## F. M. BOURN v. JOHN ROBINSON.

### Decided February 6, 1908.

**1.—Judgment Lien—Issuance of Execution—Evidence.**

In order to enforce a judgment lien on land after the expiration of twelve months from the date of the judgment, the burden of proof is on the plaintiff to show that he caused an execution to issue on the judgment within twelve months after the rendition of the judgment, and by the term "issue" as used in article 3290 of the Revised Statutes, something more is meant than the mere act of the clerk in preparing and attesting the writ; the plaintiff must show that the writ was actually placed in the hands of a proper officer for enforcement after it was issued by the clerk. The mere entries of the clerk on the execution docket showing the date of the issuance of an execution and the date when returnable, without any proof of what disposition was made of the writ after it was prepared by the clerk, does not prove that an execution "issued" as required by the statute concerning judgment liens.

**2.—Same—Inchoate Title—School Land.**

A judgment lien cannot be acquired on school land purchased from the State before the completion of the three years occupancy required by the law. Harwell v. Harbison, 43 Texas Civ. App., 343, distinguished.

Appeal from the District Court of Howard County. Tried below before Hon. R. G. Smith.

*C. H. Earnest* and *W. B. Crockett,* for appellant.

*Douthitt & Littler* and *Morrison & Morrison,* for appellee.

HODGES, ASSOCIATE JUSTICE.—On the 1st day of April, 1901, the appellant recovered a judgment in the Circuit Court of the United States for the Northern District of Texas, at Abilene, against one Frank Tomlinson for the sum of $2,629.23 and all costs of suit. Subsequently, on the 30th day of April, 1903, this judgment was abstracted and filed for record in the office of the county clerk of Howard County. It was properly recorded and indexed as required by law for fixing judgment liens. At the time the judgment was filed for record in the office of the county clerk of Howard County, Dawson County was unorganized and was attached to Howard County for judicial purposes; but subsequently, on the 20th day of March, 1906, and prior to the institution of this suit, it was duly organized in conformity with the requirements of law. On the 9th day of January, 1903, Tomlinson, the defendant in the above described judgment, filed his application to purchase from the State four sections of school land situated in Dawson County, a part of which is the land involved in this suit. On the 21st day of January thereafter his application was approved and the land awarded to him by the Commissioner of the General Land Office. Tomlinson resided

upon that part of the land so purchased designated as the home section, in compliance with the requirements of law, till on or about the 24th day of November, 1905. Up to that time he had paid all of the installments, both of the principal and interest, as they became due. On that date, and before his period of three years occupancy required by the laws of the State had expired, Tomlinson sold all of the interest he had in the entire four sections of land to the appellee, John Robinson, receiving therefor the consideration of $5500, $2000 of which were paid in cash. After his purchase from Tomlinson, appellee continued to reside upon and occupy the home section, in compliance with the provisions of law, until the period of three years occupancy was completed; and on the 18th day of January, 1906, he proved up his occupancy and received a certificate to that effect from the Land Office; and the four sections now stand on the records of that office in his name. The judgment against Tomlinson in favor of the appellant not having been satisfied, the appellant, on the 9th day of March, 1907, instituted this suit in the District Court of Howard County, seeking to foreclose his judgment lien on a part of the land which appellee had purchased from Tomlinson. The cause was tried before the court without a jury, resulting in a judgment in favor of the appellee, from which the appellant has appealed.

Appellant relied in the court below upon the validity of his judgment lien at the time of the institution of this suit, and the further fact that the land purchased from Tomlinson by the appellee was subject to the lien created by the record of his abstract. The appellee contends that the appellant failed to prove that execution had been issued upon his judgment within a year after its rendition; and, further, that Tomlinson did not at the time of his sale to Robinson own such an estate or interest in the lands as was subject to a judgment lien.

It is provided by the Acts of Congress that judgments and decrees rendered in a Circuit or District Court of the United States within any State shall be liens on property throughout such State in the same manner and to the same extent and under the same conditions only, as if such judgments and decrees had been rendered by a court of general jurisdiction in such State. (4 Fed. Stat. Ann., p. 4.) Our statute provides that when the abstracts of judgments rendered in any of the United States courts shall be recorded and indexed in the same manner required by law for recording and indexing abstracts of judgments rendered in State courts, they shall operate as liens in the same manner as is provided for judgments of State courts. (Rev. Civ. Stat., art. 3293.) Article 3290 of our statute also provides that when a judgment lien has been acquired under the laws governing the recording of abstracts of judgments, it shall continue for ten years from the date of such record and index, unless the plaintiff shall fail to have execution issued upon his judgment within twelve months after the rendition thereof; in which case the said lien shall cease to exist.

It has been decided by our Supreme Court that in order to establish the existence of a lien the burden is upon the plaintiff to prove

that an execution has been issued upon his judgment within twelve months after its rendition. (Boyd v. Ghent, 95 Texas, 46; Schneider v. Dorsey, 96 Texas, 544.) The only testimony offered by the appellant tending to show that an execution had been issued upon his judgment within twelve months, consisted of the entries on the execution docket of the clerk of the Circuit Court of the United States in which the judgment was rendered. These entries consisted of dates entered under an orderly arranged system of ruled lines, showing date of issuance of execution to be November 16, 1901, returnable to February term, 1902. There was no other evidence of what disposition was made of the writ after it had been prepared by the clerk—nothing to show whether or not it had been delivered to the plaintiff or his attorney, or to the marshal of the district. Upon this testimony alone the appellant depends to establish the fact that he had complied with the law requiring executions to be issued within twelve months from the rendition of a judgment in order to prevent its becoming dormant. The trial court held that it was insufficient to establish that fact, and we are asked to reverse that finding.

If the mere clerical writing out and attestation of the writ is all that is required to "issue" an execution, then the appellant has proven the desired fact; but such is not the law regarding the use of that term in the statute relating to the duty imposed upon the holders of judgments. The term "issue" means more than the mere clerical preparation and attestation of the writ, and requires that it should be delivered to an officer for enforcement. (Schneider v. Dorsey, *supra;* 1 Freeman on Execution, sec. 9a; 17 Ency. of Law and Procedure, 1033.) The law requires that when an execution has been placed in the hands of a sheriff, he shall note upon it the hour and the day received, and shall, within the time prescribed by the execution, make due return of what he has done, in compliance with the requirements of the writ. We can not, in the face of the record, indulge the presumption that the clerk, upon the preparation and attestation of the writ, delivered it to the proper officer. The law does not require him to do that, and hence we can not assume, from the mere entries upon his record, that he has done more than what was required of him. For aught that appears to the contrary, he may have delivered the writ into the hands of the plaintiff, or his attorney, or it may have been left among the papers and lost or misplaced without ever reaching the marshal. If we are required to presume one fact from the existence of another, the presumption would naturally be against such a thing having been done; for if he had delivered it to the proper officer it will be presumed, in the absence of evidence to the contrary, that the officer to whom it was delivered would have done his duty and made some return upon the writ showing what official action he had taken thereunder. In the case of Schneider v. Dorsey, *supra,* it was distinctly decided that in order to be a compliance with the statute the writ must be placed in the hands of the officer whose duty it is to execute it; and until this is done there has been no sufficient compliance

with the law requiring executions to be issued within a year from the rendition of the judgment in order to preserve its validity.

The issue as to whether or not an execution had been issued, as required by law, being one of fact, and having been decided adversely to the appellant in the court below, we do not think the evidence contained in the statement of facts would justify us in setting that finding aside.

But if we should be in error in disposing of the case in the manner we have upon that issue, there is still another cogent reason why the judgment of the court below should be affirmed. The facts show that the only claim to the land in controversy ever asserted by Tomlinson was that of a purchaser as an actual settler, from the State, the land being a part of the public school fund, and that he parted with that claim to the appellee, Robinson, before he had completed the three years occupancy required by law. From these facts it seems that Tomlinson never owned such an interest in the land as would be the subject of a judgment lien. That property of a defendant which is subject to a judgment duly abstracted, recorded and indexed, in the manner required to fix a judgment lien under our law, is described as being "all of the real estate of the defendant." The terms, "real estate," as used in this article, mean something more than a mere chattel interest in land, more than a simple contract right to perform conditions, aside from the payment of the purchase price, and demand a conveyance of the title. They import a freehold interest, either an estate for life, or in fee simple. (Scogin v. Perry, 32 Texas, 21; Harrington v. Sharp, 48 Am. Dec., 365.) The last case cited above was decided by the Supreme Court of Iowa in the construction of language almost exactly the same as that used in our statute. The court said: "By the language, 'real estate of the person,' we understand that the fee simple, or estate of inheritance, must be in the person, in order to have the judgment against him operate as a lien upon the land. A mere preemption right confers no such fee or estate upon the person. It is but a temporary and conditional interest unknown to the common law. It only imparts to the preemptor a right over others to purchase the land within a limited period, at a stipulated price, and if he fails to pay the price within the time required, the right ceases. It is of a nature no greater than an estate for years—a mere equitable and contingent interest." We think the reasoning quoted is applicable to the facts here involved, perhaps, with stronger force. In that case the only contingency mentioned was the payment of the purchase price; while in the case at bar there is the other condition of occupancy involved. The rights of a purchaser of school land prior to the completion of the three years occupancy are no better than those of a preemptor. He holds possession under a contract which contemplates title only upon the performance by him of certain conditions independent of the payment of the purchase money. (Besson v. Richards, 24 Texas Civ. App., 24.) The right thus held is not subject to seizure and sale under any judicial proceedings. (Williams v. Finley, 99 Texas, 468; Martin v. Bryson, 31 Texas Civ. App., 98; Gaston v. Marengo Imp. Co., 139 Ala., 465, 36 So., 738.)

In the case of Williams. v. Finley the Supreme Court said: "The State sells the land partly because of the qualification and status of the purchaser as an actual settler. Because of this it asserts its right to sell, and his to buy, under such arrangements as that stated. To carry out the policy of the law the State has the right to insist upon the maintenance of its contract and of the relation created by it. A judgment such as that rendered below would tend to the destruction of both. By selling out the settler's title at judicial sale, and putting the purchaser thereat in possession, it would destroy the occupancy of the settler—the condition on the maintenance of which the title depends—and could not at the same time require the purchaser at the judicial sale to perform it. If it be said that only by performance could he obtain the benefit of the purchase from the State, the answer is twofold: (1) there is no provision for the substitution of such a purchaser for the original one; and (2) performance would at best be optional with him, and the rights intended to be secured by the law to the State would be dependent on his will. Many persons who might bid at such sales would be wholly disqualified under the law to hold these lands as purchasers."

The absence of the right of foreclosure of a noncontract lien by a judicial sale is striking evidence of the entire absence of lien which must depend upon such foreclosure for its enforcement. The law does not give a lien which can not be enforced at any time after the obligation becomes due, subject to such other rights as may be superior thereto. The refusal to permit a judicial foreclosure and sale of the land in such cases as the one now under consideration, is based upon the personal conditions imposed by law and the relations established between the parties by the terms of the contract. The policy of the State in the disposition of its school lands is to sell to those only who will actually settle upon and occupy them as homes. In the case before us it is not claimed that Tomlinson acquired from the State the legal title to the land, but that he was vested, by virtue of his contract of purchase, with an equity that became subject to the judgment lien while he was in possession of the lands. In order for this equity to attain the dignity of "real estate," as used in the statute, it must amount to a freehold interest. A freehold is an estate for life, or in fee simple. (1 Washburne Real Prop., 41, 42.) That no mere life estate was contemplated in the contract with the State is made evident from the legal requirements as to the conveyance that shall be made upon the ultimate compliance by the purchaser with the conditions of the sale. The law provides for a fee simple conveyance in such an event; hence, it follows that whatever fee, if any, became vested in Tomlinson by virtue of his contract of purchase from the State was a fee simple, subject only to the prior right of the State to enforce the conditions imposed by the terms of the contract. One of the essential qualities of a fee simple estate is that it is one of inheritance, one which passes, upon the death of the ancestor, to all the heirs generally, and not to a particular heir or set of heirs. (11 Am. & Eng. Ency. Law, 366; 16 Cyc., 602; Black's Law Dict., 520.) Had Tomlinson

died while in possession of the land, and before he had completed the three years of occupancy, the interest which he at that time owned would not have passed to his heirs generally, but would have been forfeited to the State, unless some particular heirs, not disqualified under the law, should enter into a new obligation with the State to carry out the terms of the purchase and continue to reside on the land. In order to avail themselves of the occupancy and payments made by Tomlinson, such heirs must make the affidavit required by law and enter into the obligation to pay the remainder of the purchase price; and by virtue of this contract and the terms of the statute, and not by right of inheritance from Tomlinson, is the right acquired to obtain a patent to the land. Again, it is only by virtue of the permission of the statute that the purchaser of school lands may assign his interest to another. A freehold estate is assignable by virtue of the rights acquired under the conveyance, resulting from the nature of the estate, and does not rest upon permission from the grantor given independently.

After the completion of the three years of occupancy the rights of the purchaser of school land become much enlarged by his having complied with the conditions of the sale, other than the payment of the price, imposed by law. He, or his vendee, can then pay the entire balance due the State and secure a fee simple title to the land. Until then he has nothing more than a chattel interest, and consequently not such an estate as becomes subject to a judgment lien.

Appellant cites us to the case of Harwell v. Harbison, 43 Texas Civ. App., 343, decided by the Court of Civil Appeals of the Second District. It was there held that there was no reason in law why a purchaser of school lands should not be permitted to mortgage the lands before, as well as after, he had completed the three years of occupancy. It is said that if the mortgagee is willing to wait till the requisite occupancy is completed, before foreclosing his mortgage, and to take the chances of the mortgagor complying with the conditions of the sale, no one else ought to complain. Admitting the correctness of that ruling as applied to the facts of the case then before the court, it is far from being a precedent for the determination of this. Parties may enter into such contracts as they may see fit, when not in violation of some established rules of law, and may create such rights, or liens, as they see proper, which may depend for their enforcement upon conditions other than the maturity and nonpayment of the debt sought to be secured. As a general rule, any species of property which may be sold, or conveyed, may also, in the absence of some legal inhibition, be mortgaged or conveyed in trust, to secure a debt. Many interests *in presenti*, or in expectancy, may be the subject of conveyances which could not be seized under any legal process, or subjected to a judicial sale. A crop may be mortgaged before it is planted, but it is not then subject to be seized under execution, nor would the lien then created, if done in good faith to secure a contemporaneous debt, be considered in fraud of prior existing creditors of the mortgagor. The right of foreclosure in such cases would be postponed till such time as the crops assumed the form of tangible personal property. The

grounds upon which a mortgage will be sustained when given upon property not then in existence, or property in existence not then owned but afterward acquired by the mortgagor, are upon the principles of equity and estoppel. (1 Jones on Mort., secs. 151, 152.) If there is a potential right existing in one to acquire certain articles, or species, of property, a valid mortgage may be given in advance of the acquisition. (Richardson v. Washington, 88 Texas, 344.) One who buys the right of the mortgagor with actual knowledge of the lien given by him, is estopped equally with the original mortgagor to assert that the lien is not binding upon the property, although the property upon which the lien is given was not in existence at the time the mortgage was executed. A prospective heir may sell or mortgage his expectancy in the estate of his ancestor during the latter's lifetime. (Hale v. Holland, 90 Texas, 427; Bryan v. Sturgis Nat. Bank, 40 Texas Civ. App., 307.) But this expectancy, even though it be based upon the real estate of the ancestor, could not be subjected to a judgment lien against the heir till the title actually vested. If the heir should sell the expectancy before descent cast the holder of a judgment lien could not then subject the property in the hands of the purchaser to the satisfaction of his debt. (Hale v. Holland, *supra.*) In the case of Harwell v. Harbison, *supra,* the vendee of the purchaser took the land with the knowledge that a mortgage had been given by his vendor. There was at the time of the creation of the mortgage a potential right in the mortgagor to acquire the property by complying with the terms of his purchase. By reason of that fact he could create a valid lien upon it to be subject to foreclosure when his title became perfect. His vendee, having actual knowledge of the existence of this lien, was in no attitude to deny its validity, or its superiority over his title.

By disposing of the lands involved in this suit, before he acquired a freehold interest, Tomlinson effectually prevented the lien of the appellant from attaching. If it did not attach in his hands it could not afterward do so while in the hands of a stranger to the judgment. When the appellee purchased from Tomlinson he took the lands unincumbered by the lien. There being no error, the judgment of the District Court is affirmed.

*Affirmed.*