

# THE ATTORNEY GENERAL

## OF TEXAS

### AUSTIN 11, TEXAS

**WILL WILSON**
**ATTORNEY GENERAL**

May 22, 1962

Mr. Henry Wade
District Attorney
Records Building
Dallas 2, Texas

Opinion No. WW-1336

Re: Liability of an undivided
1/3 interest in a tract of
land owned by the Dallas
County Hospital District
for ad valorem taxes.

Dear Mr. Wade:

You have asked the opinion of the Attorney General as to whether the Dallas County Hospital District (hereinafter called the District) is liable for ad valorem taxes for 1961 on its one-third (1/3) undivided interest in the fee in certain real property owned by it on January 1, 1961. The other undivided 2/3 interests were owned by the Juliette Fowler Homes, Inc. and the Methodist Home. The property was a gift to the District.

You state the following pertinent facts:

". . . The deed conveying the property to the Dallas County Hospital District, the Juliette Fowler Homes, Inc. and the Methodist Home, Waco, Texas, is dated February 16, 1960. At the time of the receipt the Dallas County Hospital District was put on notice that all or a part of subject property would be taken by the Highway Department and thus planning on specific use was delayed until action was taken by the Highway Department.

"After negotiation, approximately one-half of the lot was deeded, for consideration, to the State Highway Department, which sale included improvements thereon in the form of a house-apartment conversion. During the period from January 1 through July 15, 1961, however, income from rentals of the house received by the District totaled a net of $82.33, like amounts being received by the two charitable institutions. The

house was then removed by the State
Highway Department.

"After such reduction in the size
of the property, it was clear that no
use could be made of the property as
such and that the same should be sold
as soon as feasible. Rental income
received and income from sale, when
accomplished, is planned for use,
along with other available funds, in
the development of a tubercular divi-
sion of the Hospital District."

The question of the tax liability of the District arises
because:

1) The District owns only an undivided
   interest in the fee instead of the
   entire fee in the tract of land;

2) During a portion of the year 1961
   persons other than any of the owners
   were tenants in possession and using
   the property in its entirety, for
   which usage they paid money rentals
   to the joint owners of the property.

The law question arises as to whether the undivided
interest in the realty belonging to the District was owned,
held or used by it in such an exclusive manner and for a pub-
lic purpose as to be exempt from ad valorem taxes levied against
the land by the State of Texas, County of Dallas, City of Dallas
and Dallas Independent School District.

The District was created under authority of Art. IX, Sec.
4 of our State Constitution and the enabling statute therein
authorized, Art. 4494n, V.C.S.

1.

Our opinion is that the undivided interest owned by the
District in this realty is exempt from these taxes.

2.

The District was expressly authorized to accept the pro-
perty as a gift under Sec. 15 of Art. 4494n, which reads as
follows:

"Said Board of Managers of the
Hospital District is authorized on
behalf of said Hospital District to
accept donations, gifts, and endow-
ments for the Hospital District, to
be held in trust and administered
by the Board of Managers for such
purposes and under such directions,
limitations, and provisions as may
be prescribed in writing by donor,
not inconsistent with proper manage-
ment and objects of Hospital District."

3.

The subject of the tax in question is an undivided inter-
est in the fee simple title to the entire tract of land. This
interest is real property and unless other provisions of law
clearly exempt it from ad valorem taxes it is subject to such
taxes under the following provisions of our State Constitution
and statutes:

a) Art. VIII, Sec. 1 of our State Constitution,
which in its pertinent portion reads:

". . . all property in this State,
whether owned by natural persons or
corporations, other than municipal,
shall be taxed in proportion to its
value, . . ."

b) Art. 7146 reads:

"Real property for the purpose of
taxation, shall be construed to in-
clude the land itself, whether laid
out in town lots or otherwise, and
all buildings, structures and im-
provements, or other fixtures of what-
soever kind thereon, and all the rights
and privileges belonging or in any
wise appertaining thereto, and all
mines, minerals, quarries and fossils
in and under the same."

c) Art. 7319 which reads:

"For the purpose of taxation, real
property shall include all lands with-
in this State, and all buildings and

fixtures thereon and appertaining
thereto, except such as are expressly
exempted by law."

d) Art. 7149, which in its pertinent portion,
reads as follows:

"'Tract or lot.' - The term, 'tract
or lot,' and 'piece or parcel,' of real
property, and 'piece and parcel' of
land, wherever used in this title, shall
each be held to mean any quantity of
land in possession of, owned by or re-
corded as the property of the same claim-
ant, person, company or corporation."

Our State Constitution and statutes relevant to the situa-
tion under consideration provide that the following described
properties shall be exempt from ad valorem taxes:

Art. VIII, Sec. 2 of our Constitution, in its pertinent
portion, reads:

". . . the legislature may, by
general laws, exempt from taxation
public property used for public pur-
poses; . . ." (underscoring added).

Art. XI, Sec. 9 of our Constitution, in its pertinent
portion, reads:

"The property of counties, cities
and towns, . . . and all other property
devoted exclusively to the use and bene-
fit of the public shall be exempt from
forced sale and from taxation, . . ."
(underscoring added).

Art. 7150, V.C.S., in its pertinent portions, reads:

"The following property shall be
exempt from taxation, to-wit. . .

". . .

"4.  All property, whether real or
personal, belonging exclusively to this
State, or any political subdivision
thereof, . . ." (underscoring added).

4.

The District is a political subdivision of the State. Bexar County Hospital District v. Crosby, 160 Tex. 116, 327 S.W.2d 445 (1959). Therefore the interest in the tract of land owned by the District qualifies for exemption from ad valorem taxes as being "public property" as required by Art. VIII, Sec. 2 of our Constitution (supra) and as "belonging exclusively to. . . any political subdivision" of this State as required by Art. 7150 (supra).

But our Constitution further requires that property to be exempt must be ". . .devoted exclusively to the use and benefit of the public. . ." (Art. XI, Sec. 9, supra) or ". . .used for public purposes. . ." (Art. VIII, Sec. 2, supra).

Our Supreme Court in Lower Colorado River Authority v. Chemical Bank & Trust Co., 144 Tex. 326, 190 S.W.2d 48 (1945) held that the portion of Art. XI, Sec. 9 of our Constitution which reads, "all other property devoted exclusively to the use and benefit of the public" was not circumscribed by the doctrine of ejusdem generis by way of restricting the application of this quoted portion by any of the preceding portion of the Section. This Section in its entirety reads as follows:

> "The property of counties, cities and towns, owned and held only for public purposes, such as public buildings and the sites therefor, fire engines and the furniture thereof, and all property used, or intended for extinguishing fires, public grounds and all other property devoted exclusively to the use and benefit of the public shall be exempt from forced sale and from taxation, provided, nothing herein shall prevent the enforcement of the vendors lien, the mechanics or builders lien, or other liens now existing."

Further distinguishing governmental and public usage, the Court said:

> "'The test is not whether the property is used for governmental purposes. That is not the language of the Constitution. This Court has never adopted that narrow limitation and the weight of authority is opposed

to it.  Much public property of
municipalities exempt from taxation
has, and can have, no governmental
use.  The test is whether it is
devoted exclusively to a public use.'"
(at p. 51).

Art. 7150, subd. 4 (supra) has been held to require that
property exempt under its provisions must be "used for public
purposes".  City of Abilene v. State, 113 S.W.2d 631 (Civ.App.
1938, error dism.).  In this case the court said:

"It is quite apparent that the
exemption declared in said R.S. 1925,
art. 7150, is more comprehensive
than the power which the Legislature
possessed.  The purpose of the Legis-
lature is broad enough to exempt pub-
lic property regardless of its use.
This the Legislature was expressly
denied the power to do.  But it does
not follow, we think, that the statute
is for that reason wholly inoperative.
We see no reason why it may not be
operative, as an exercise of all of
the power the Legislature had, to de-
clare the exemption.  The declared
exemption includes public property
used for public purposes and to that
extent, we think, the statute is
valid and operative."  (at pages 635,
636) (underscoring added).

Our Supreme Court confirmed this holding without making
reference to this case in A. & M. Consolidated Independent
School Dist. v. City of Bryan, 143 Tex. 348, 184 S.W.2d 914
(1945).

We restate that the subject of the tax in question is
only an undivided 1/3 interest in the fee simple title to the
entire tract of land.  All of this 1/3 interest and estate is
of the same undivided but uniform kind, and is a freehold inter-
est.

"A freehold is an estate for
life, or in fee simple.  1 Wash-
burn, Real Prop. 41, 42."  Bourn v.
Robinson, 107 S.W. 873 (Civ.App.
1908) (at p. 876); 22 Tex.Jur.2d

643, Estates, Sec. 1.

The general principle of law that separate interests in realty are separately taxed to the several owners is well stated in Hager v. Stakes, 116 Tex. 453, 294 S.W. 835 (1927) as follows:

"Real estate is ordinarily taxed as a unit; yet, where there have been severances by conveyance, exception, or reservation, so that one portion of the realty belongs to one person and other portions to others, each owner should pay taxes under proper assessment against him of the portion owned by him." (at p. 842).

The court cited State v. Downman, 134 S.W. 787 (Civ.App. 1911), which was affirmed by the U. S. Supreme Court in Downman v. State of Texas, 231 U.S. 353 (1913). In its affirming opinion the Supreme Court said:

"Usually real estate is taxed as a unit; but as different elements of the land are capable of being severed and separately owned, the statute may authorize a separate assessment against the owners of the severed parts. Accordingly, if the title has been severed, land may be taxed to one, timber to another, or land to one and coal to another. The state court held that such was the law of Texas, in view of the general language of the statute defining real estate as including not only the land itself, but the buildings on the land and the minerals under the land."

The statute considered by both courts was Article 5062, Sayles' Ann. Civ. St. 1897, which was in every respect pertinent the same as present Art. 7146, V.C.S., supra.

The Court of Civil Appeals held that the grant with reference to coal in the land in question passed title to the coal and created a distinct taxable property in the tract of land. It said:

"The grant is more than a mere
license to enter and mine the coal;
it is a conveyance of the coal it-
self, . . . The title passes to it
as property.  It is true its value
must be added to the valuation of
the land, but it by no means follows
that it must be assessed with it.
The parties have created two dis-
tinct properties in the same land;
one holding one property right in
the land, and the other a distinctly
separate property interest there-
in.  The statute, as before said,
when read in view of the constitu-
tional provision quoted, would re-
quire the assessment to be made
in the names of the persons or
corporations holding such property
interest in the land.  True, the
total assessment must equal the
value of the land augmented by the
value of the coal or mine, but the
assessment of each should be made
separately according to the several
holdings to the end that each 'shall
pay a tax in proportion to the value
of his, her, or its property.'"
(at p. 795).

The law is settled that each <u>freehold estate or interest
of the same uniform kind</u> in the same tract of land is a separ-
ate entity for purposes of ad valorem taxation.  The following
authorities support this proposition.

a) The case of <u>Galveston Wharf Co. v.
City of Galveston</u>, 63 Tex. 14 (1884)
held that the undivided 1/3 interest
owned by the City of Galveston in cer-
tain realty and property was exempt
from ad valorem taxes.  The other 2/3
undivided interest owned by the Galves-
ton Wharf Co., a private corporation,
was held to be taxable against that
corporation.  This interpretation of
the holding of this case is confirmed
by statement of the court in <u>Texas
Turnpike Company v. Dallas County</u>,
153 Tex. 479, 271 S.W.2d 400 (1954)
(at p. 403).

b) a 9/10ths undivided interest owned in
fee and the remaining 1/10th undivided
fee interest in the same lot of land
held under a life estate, both by the
same person, are distinct and severable
taxable estates or interests.  Trimble v.
Farmer, 157 Tex. 533, 305 S.W.2d 157 (1957).

c) Undivided interests created by oil and
gas leases in the minerals in a tract
of land are separate taxable estates.

Texas Co. v. Daugherty, 107 Tex. 226, 176 S.W. 717
(1915); Sheffield v. Hogg, 124 Tex. 290, 77 S.W.2d
1021 (1934), motion for reh. overruled, 124 Tex.
290, 80 S.W.2d 741 (1935); Victory v. Hinson, 129
Tex. 30, 102 S.W.2d 194 (1937); Buttram v. Gray
County, 62 F.2d 44 (C.C.A. 5th 1932, cert. den.
289 U.S. 728); State v. University of Houston,
264 S.W.2d 153 (Civ.App. 1954, error ref. n.r.e.).

Further, the case of Galveston Wharf Co. v. The City of
Galveston, supra, is conclusive in establishing the further
principle that such an undivided interest may be "used", "de-
voted to", and "belong to" the owner "exclusively" within the
meaning of Art. VIII, Sec. 2 and Art. XI, Sec. 9 of our State
Constitution.  See also State v. University of Houston, supra.

We believe that our holding with reference to this exclu-
sive ownership and use of an undivided freehold interest of a
uniform legal kind in a tract of land is not in conflict with
the cases of St. Edwards' College v. Morris, 82 Tex. 1, 17 S.W.
512 (1891) and City of Longview v. Markham-McRee Memorial Hos-
pital, 137 Tex. 178, 152 S.W.2d 1112.  These two cases consi-
dered the exclusive use of buildings; the subject of our consi-
deration in this opinion is property.

5.

You state that the District's interest in this land has
been held only for the purpose of sale or conversion into cash
and that the rental of the apartment house on the property was
only a means of producing a temporary income from the property
pending its sale.  This holding and use by the District was
for a public purpose.  In addition to the authorities herein-
after considered we are of the opinion that Art. 4494n, Sec.
15 (supra) clearly authorized the District to hold the undivided
interest in the land and to receive the income from it pending
sale of the property, free from ad valorem taxes.

In <u>State v. City of San Antonio</u>, 147 Tex. 1, 209 S.W.2d 756 (1948), the facts were that the City of San Antonio and San Antonio Independent School District bought in the year 1938 a city lot at tax foreclosure sale for delinquent ad valorem taxes. The owner of the lot continued in possession until 1946; also he rented two buildings thereon to tenants and collected all rents.

The State and county argued that the land

> ". . . was not owned and held by
> the city and school district during
> that time only for public purposes,
> as contemplated by Art. XI, Sec. 9 of
> the Constitution. . . because: (1) no
> effort was made during those years to
> sell the lot; (2) the lot was never put
> to any public use because Barnes, the
> former owner, was permitted to remain
> in possession and to receive and retain
> the rents and profits therefrom; and
> (3) from the time the city and school
> district got their tax deed in 1938
> until some time in 1946 he remained in
> continuous possession without being
> disturbed."

The trial court's judgment decided that the city and school district were 'owning and holding said property solely for the purpose of collecting taxes thereon." The Supreme Court said that this purpose

> "can mean nothing except that they
> were holding it until it could be re-
> sold. That was an owning and a hold-
> ing for a public purpose, under Art.
> XI, Sec. 9, . . ."

of our Texas Constitution, and that Court held that because the lot was held and owned by the city and school district and for the stated public purpose that the land was exempt from ad valorem taxes. The Court in this case and on this point cited the case of <u>City of Austin v. Sheppard</u>, 144 Tex. 291, 190 S.W.2d 486. In this latter case the Court said:

> "It is undisputed that the pro-
> perty so purchased is merely being
> held by the city until it can find
> purchasers who are willing to pay

the prices asked therefor."

In this later case and on the basis of the purpose stated in this quotation, the Court held that the property was being held for a public purpose.

In the case of State v. City of Houston, 140 S.W.2d 277 (Civ.App. 1940, error ref.), the Court held that the temporary rental of two houses upon a tract of land which was held by the City of Houston for the purpose of resale did not change the purpose of the holding of the land from a public purpose.

Our holding in this opinion does not in any respect conflict with the two prior opinions of the Attorney General of Texas, Nos. 0-2506 (1940) and V-1399 (1952). Those opinions may be distinguished on the basis that the properties therein considered were being held for proprietary purposes for the production of income only.

## S U M M A R Y

The undivided interest in the fee in the tract of land held by the Dallas County Hospital District for purpose of sale and conversion into cash is held exclusively and for a public purpose and is exempt from all ad valorem taxes.

Yours very truly,

WILL WILSON
Attorney General of Texas

By: W. E. Allen
Assistant

WEA/jp

APPROVED:

OPINION COMMITTEE:
W. V. Geppert, Chairman

Jay Howell
Robert Lewis
Arthur Sandlin
Dudley McCalla

REVIEWED FOR THE ATTORNEY GENERAL
By: Houghton Brownlee, Jr.