**Royce L. McPHAIL, Appellant,**

v.

**TEXAS ARCHITECTURAL AGGRE-GATE, INC., et al, Appellee.**

**No. 5153.**

Court of Civil Appeals of Texas, Eastland.

Nov. 16, 1978.

Rod V. Steinburg, Helm, Pletcher, Hogan & Burrow, Houston, David M. Williams, San Saba, for appellant.

Gary R. Price and W. Stephen Ellis, Brownwood, for appellee.

DICKENSON, Justice.

The issue is whether an option to purchase land is void. Legal title to two tracts of land is in the Veteran's Land Board, and the lands in question are being purchased by two veterans who granted an option to a third party. The trial court held the option void. Based upon our reading of Article 5421m, Section 17, and Section 161.224 of the Texas Natural Resources Code,[1] we will

---

1. Texas Natural Resources Code § 161.224 (1978). "Time Limit on Transfer" reads as follows:

(a) No property sold under this chapter may be transferred, sold, or conveyed in whole or part until the original veteran purchaser has enjoyed possession for a period of three years from the date of purchase of the property and complied with the terms and conditions of this chapter and rules of the board.

(b) If the veteran purchaser dies or becomes financially incapacitated or if there is an involuntary transfer by court order or proceedings including bankruptcy, sheriff or trustee sale, or divorce, the property may be conveyed before the expiration of the three-year period by the purchaser or his heirs, administrators, or executors by complying with rules of the board and by securing the approval of the board.

(c) After the three-year period, a purchaser may transfer, sell, or convey land purchased under this chapter at any time if all mature interest, principal, and taxes have been paid, the terms and conditions of this chapter and rules of the board have been met, and the approval of the board has been obtained.

This Code was adopted by Senate Bill 1207 of the 65th Legislature, and its provisions became effective on September 1, 1977. The lawsuit was tried on September 27, 1977, and the judgment was signed on November 8, 1977. Section 15 of Senate Bill 1207 provided that: "This restatement of the law does not change the substantive law of this state, and . . . it is the intent of the legislature that each provision of this code be interpreted to have the same meaning as the statutes from which it is derived." Section 161.224 was derived from Sec-

modify the judgment to provide that the option is not void but that it was unenforceable until three years after the date of the veterans' purchase of the property from the Veteran's Land Board and that it was not thereafter, and is not presently, enforceable without the approval of the sale by the Veteran's Land Board.

W. E. Curtis and Billy Curtis (veterans) purchased adjacent tracts of land from the Veteran's Land Board (Board) on November 5, 1972.[2] The veterans joined in the execution of one lease agreement (with an option to purchase) covering both tracts, in favor of Royce L. McPhail on May 1, 1974.[3] The Board neither joined in, nor approved of, the execution of this lease agreement.

Each of the veterans and their wives executed separate coal mining leases to Texas Architectural Aggregate, Inc. (mining lessee) in 1975. These mining leases were approved by the Veteran's Land Board. The mining lessee attempted to exercise its right to explore for coal, and McPhail objected. Litigation resulted between the mining lessee and McPhail. The veterans and the Board later became plaintiffs, along with the mining lessee, in the lawsuit when amended pleadings were filed to assert a cause of action against McPhail for trespass to try title, for a declaratory judgment, and for an injunction. After a nonjury trial, judgment was rendered for plaintiffs, holding McPhail's option to purchase the land void. He appeals. We will modify the judgment and affirm.

■ The first point of error claims the trial court erred in declaring the purchase option void since the suit was in trespass to try title. We disagree.

*Frost v. Mischer*, 463 S.W.2d 166 (Tex. 1971), cites Article 7364, Tex.Rev.Civ.Stat.

---

tion 17 of Article 5421m, Tex.Rev.Civ.Stat.Ann. (1962).

2. Each of the contracts were filed for record, and they contain the following language:

. . . . .

7. Buyer understands that this Contract of Sale and Purchase can only be transferred with the approval of the Seller and only on forms and by following instructions furnished to him by the Seller and that the contract cannot be transferred, sold or conveyed until he shall have enjoyed possession for a period of three (3) years from the effective date hereof, after which period Buyer may transfer, sell or convey said property, subject to approval of the Seller; provided however as the only exceptions allowed by law, that the said property may be transferred, sold or conveyed prior to the expiration of said 3-year period in the event the Buyer dies or becomes incapacitated by reason of illness or accident and provided further, that in making any transfer, sale or conveyance of said property, the Buyer, as assignor, may not reserve any interest therein. These provisions shall not be construed to prohibit Buyer from transferring, selling or conveying the property at any time upon payment in full of the entire indebtedness to Seller.

. . . . .

10. When the entire indebtedness due by the Buyer under this contract is paid, Seller agrees to execute a deed, under its official seal, to the original purchaser of said land or to the last assignee whose assignment has been approved by the Seller.

3. The lease agreement provides in part:

TO HAVE AND TO HOLD the aforesaid premises hereby demised unto Party of the Second Part from the 1st day of May, 1974, until the 30th day of April, 1979, said Lease being for a term of five (5) years.

*Payment for said Lease* shall be in the amount of Four and no/100 ($4.00) Dollars per acre per year on 266 acres, as follows:

(1) Payment in the amount of Two Thousand One Hundred Twenty Eight and no/100 ($2,128.00) Dollars, which shall represent rental payments for the first and fifth year of said Lease;

(2) Payment in the amount of One Thousand Sixty Four and no/100 ($1,064.00) Dollars, on the 1st day of May, 1975;

(3) Payment in the amount of One Thousand Sixty Four and no/100 ($1,064.00) Dollars, on the 1st day of May, 1976; and

(4) Payment in the amount of One Thousand Sixty Four and no/100 ($1,064.00) Dollars, on the 1st day of May, 1977.

*However, it is further agreed by and between the parties* hereto that during said five-year lease period, *Party of the Second Part may at any time exercise an option to purchase said premises under the following terms and conditions*: (emphasis added)

(1) The purchase price shall be in the sum of $250.00 per acre on the said 266.7 acre tract.

(2) Upon tender and payment by Party of the Second Part of the cash sum of $66,675.00 to Party of the First Part, Party of the First Part shall execute and deliver to Party of the Second Part a Warranty Deed conveying the above described premises, save and except a reservation of the minerals . . ..

Ann. (1960), which provides that: "The method of trying titles to lands, tenements or other real property shall be by action of trespass to try title." *Frost* holds that a suit for injunction may not be substituted for an action in trespass to try title.

Rule 48, T.R.C.P., provides that a party may make two or more claims or defenses in the alternative, regardless of consistency and whether based upon legal or equitable grounds or both.

█ The second point of error contends that the trial court did not have jurisdiction to enter a judgment declaring the option to be void, that such decision was merely advisory, and that there was no justiciable controversy between the parties. We disagree. We hold that the Declaratory Judgments Act[4] authorized the trial court to declare the rights of the parties and to construe the contract between the veterans and McPhail.

McPhail contends that the judgment declaring the option void is based upon the hypothetical proposition that the option will be exercised. McPhail relies upon *Reuter v. Cordes-Hendreks Coiffures, Inc.*, 422 S.W.2d 193 (Tex.Civ.App.—Houston (14th Dist.) 1967, no writ). That case is distinguishable. The parties in that case had signed an agreement with a covenant against competition. The plaintiffs in that case were not happy with the agreement which they had made, and they thought it was unreasonable; however, the record in that case did not reflect any present intention on the part of those plaintiffs to engage in the practice of cosmetology within the prohibited area. The court stated: "A mere difference of opinion, not involving the assertion of adverse interests, is not sufficient to support an action for declaratory judgment." The opinion in *Reuter* states that the record presents no "actual, genuine, live, controversy" and that a declaratory judgment "would be in the nature of an advisory opinion that might or might not affect the future relations of the parties." In the case at hand, there is more than a mere difference of opinion. There is an actual, genuine, live controversy between the parties as to their rights under the lease agreement which provided for the option to purchase.

This case is not like a lease agreement with a "right of first refusal" in the event of a sale of the leased property. As this court stated in *Henderson v. Nitschke*, 470 S.W.2d 410 (Tex.Civ.App.—Eastland 1971, writ ref'd n. r. e.), and again in *A. P. Simons Company v. Julian*, 531 S.W.2d 451 (Tex.Civ.App.—Eastland 1975, no writ):

> So under a lease provision for a first option to purchase the premises at such price as might be agreed on between the lessor and any bona fide purchaser, prior to the making of an actual agreement as to price between the lessor and a prospective purchaser, *the lessee has no accrued right of purchase, but only a promise thereof which for fruition is wholly dependent on a future event which might never occur.* (Emphasis added)

McPhail's lease with the veterans purports to give him the option to purchase the

4. Article 2524-1. Uniform Declaratory Judgments Act reads in part as follows:

Section 1. Courts or record within their respective jurisdictions shall have power to declare rights, status, and other legal relations whether or not further relief is or could be claimed. No action or proceeding shall be open to objection on the ground that a declaratory judgment or decree is prayed for. The declaration may be either affirmative or negative in form and effect; and such declarations shall have the force and effect of a final judgment or decree.

Sec. 2. Any person interested under a deed, will, written contract, or other writings constituting a contract, or whose rights, status, or other legal relations are affected by a Statute, municipal ordinance, contract, or franchise, may have determined any question of construction or validity arising under the instrument, Statute, ordinance, contract, or franchise and obtain a declaration of rights, status, or other legal relations thereunder.

Sec. 3. A contract may be construed either before or after there has been a breach thereof.

. . . . .

Sec. 12. This Act is declared to be remedial; its purpose is to settle and to afford relief from uncertainty and insecurity with respect to rights, status, and other legal relations; and is to be liberally construed and administered.

. . . . .

lands "at any time" during the five-year lease. The option is not dependent upon a future event. It is a present right which McPhail is claiming, even though he has not attempted to exercise the option. We recognize the rule that there must be a justiciable controversy between the parties before a declaratory judgment action will lie. *Firemen's Insurance Company of Newark, New Jersey v. Burch*, 442 S.W.2d 331 (Tex. 1968). We hold that the record in this case presents a justiciable controversy and that the trial court did not err in ruling upon the validity of the option.

■ The third point of error claims that the trial court erred in declaring the purchase option void since the type of option in this case is not prohibited by the act.[5] We agree that the option is not void. Appellees rely upon Section 161.227 of the Code, which prohibits the veterans from granting a lease which contains "a provision for option or renewal of the lease or re-lease of the property for any term . . .." It seems clear to us that this prohibits an option for a new lease or renewal of the existing lease, but it does not appear to specifically prohibit an option to purchase. We hold that Section 161.227 of the Code does not make the purchase option void.

■ Section 161.224, supra, note 1, specifically provides that property purchased from the Veteran's Land Board may not be "transferred, sold, or conveyed in whole or part until the original veteran purchaser has enjoyed possession for a period of three years from the date of purchase of the property . . .." The granting of the option from the two veterans to McPhail did not violate this provision because the option did not pass any title. It did not constitute a transfer, sale or conveyance of any interest in the property. *Roberts v. Armstrong*, 231 S.W. 371 (Tex.Comm.App. 1921, judgment adopted); *Knox v. Brown*, 277 S.W. 91 (Tex.Comm.App.1925, judgment adopted); *Lusher v. First Nat. Bank of Fort Worth*, 260 S.W.2d 621 (Tex.Civ. App.—Fort Worth 1953, writ writ ref'd n. r. e.); *Click v. Seale*, 519 S.W.2d 913 (Tex.Civ. App.—Austin 1975, writ ref'd n. r. e.).

Appellees rely on the case of *Venable v. Patti*, 490 S.W.2d 194 (Tex.Civ.App.—Texarkana 1973, writ ref'd n. r. e.). In that case, the veteran attempted to sell and convey the land during the three-year period after he purchased the property from the Veteran's Land Board. The opinion states:

> The length of Patti's possession is decisive because Article 5421m, Section 17 regulates and circumscribes resale of land purchased by a veteran, such as Patti, under the Veteran's Land Program. . . The statute expresses public policy and constitutes a limitation on the right and power of a purchaser, such as Frank Patti, to alien or transfer the property purchased from the Board for a three-year period after date of the purchase.
>
> . . . the agreement to sell was in direct contravention of Article 5421m and the public policy expressed therein and is not enforceable . . .

■ In this case, the veterans did not actually sell or convey the property during the three-year period following their purchase from the Veteran's Land Board. They only gave McPhail the option to purchase the property, and the option is subject to compliance with the requirements of Sec-

---

5. Article 5421m, Tex.Rev.Civ.Stat.Ann. (1962), is the Veteran's Land Board Act. Section 17 of the Act contained the provisions relating to contracts of sale and transfers. As noted in footnote 1, supra, this Act was repealed by the Texas Natural Resources Code on September 1, 1977. Section 161.224 of the Code has been quoted at length in footnote 1. Section 161.227 of the Code was also taken from Section 17 of the Act, and it now reads as follows:

(a) No land purchased under this chapter may be leased by the purchaser for a term of more than 10 years except for oil, gas, and other minerals and as long after 10 years as minerals are produced from the land in commercial quantities.

(b) No lease may contain a provision for option or renewal of the lease or re-lease of the property for any term, and the taking of an option, renewal, or re-lease agreement in a separate instrument to take effect in the future is prohibited. A lease or instrument that contains an option, renewal, or re-lease agreement in violation of this section is expressly declared to be void.

tion 161.224 of the Texas Natural Resources Code, supra, note 1. Even though the contract between the parties did not refer to this statute, it is clear that any sale by the veterans must comply with it. McPhail cannot exercise his option to purchase without securing approval of the Veteran's Land Board, but the option is not void. It was unenforceable during the three-year period, and it is not presently enforceable unless the Veteran's Land Board gives its approval to the sale.

*Bellah v. First National Bank of Hereford*, 478 S.W.2d 636 (Tex.Civ.App.—Amarillo), writ ref'd n. r. e. per curiam, 484 S.W.2d 558 (Tex.1972), concerned land purchased by a veteran and then mortgaged. The court of civil appeals stated:

> Although the legal title to the land is vested in the State, the purchaser, upon execution of the contract of sale and purchase and entry into possession, becomes vested with equitable title. It is axiomatic that any ownership in property that may be transferred, sold or conveyed may also be mortgaged or conveyed in trust absent some legal inhibition. *Bourn v. Robinson*, 49 Tex.Civ.App. 157, 107 S.W. 873 (1908, no writ); *Clark v. Altizer*, 145 S.W. 1041 (Tex.Civ.App.—Austin 1912, writ ref'd). The statutory enactment not only does not inhibit the impression of a voluntary lien on the purchaser's contractual interest, but specifically provides that the purchaser may, except under certain conditions not shown to be determinative here, transfer, sell or convey his contractual interest. It has been held that the purchaser's contractual interest in land purchased under the Veterans' Land Program is subject to execution and sale for private debts. Tex. Atty.Gen.Op.No. S–183 (1955). *A fortiori*, the contractual interest is subject to liens voluntarily placed thereon. We hold, therefore, that a purchaser of lands under the Veterans' Land Program, if otherwise in compliance with the statutory requirements and the rules and regulations of the Veterans' Land Board, may

> voluntarily impress upon his contractual interest therein a lien subject to foreclosure and sale when default occurs in the obligation for which the contractual interest is pledged . . . .

The Supreme Court's per curiam opinion in *Bellah* states that "we do not pass upon the question of whether petitioner's beneficial interest in the three tracts in question under the contracts of purchase and sale with the Veteran's Land Board was subject to the voluntary lien which he created." In *Bellah*, the veteran had made a conveyance in trust to secure his debt. In this case, there was no conveyance to McPhail.

 The fourth point of error claims that the equitable "clean hands" doctrine bars the appellees from seeking a declaration that the purchase option was void. This point of error is overruled. We note that the Veteran's Land Board filed pleadings which prayed for the same relief requested by the veterans and the mining lessee. The record also supports the implied finding of the trial court that the veterans were not guilty of inequitable conduct in granting the disputed option. On an appeal from a nonjury trial where findings of fact and conclusions of law are neither requested nor filed, the decision of the trial court must be affirmed if it can be upheld on any legal theory which is supported by the evidence. *Seaman v. Seaman*, 425 S.W.2d 339 (Tex.1968).

The fifth point of error states that the trial court erred in declaring the purchase option void since it can be performed without violating any of the provisions of the Veteran's Land Board Act, Article 5421m, supra, notes 1 and 5. We agree for the reasons stated in our discussion of the third point of error. The judgment will be modified as set forth below.

 The sixth and seventh points of error assert in the alternative that the statute is unconstitutional if it invalidates the purchase option. We disagree. McPhail had constructive notice of the provisions con-

tained in the contracts with the Veteran's Land Board. Those provisions are quoted in footnote 2, supra. Enforcement of those provisions will not violate due process [6] nor will such enforcement violate the equal protection clause of the United States Constitution.[7]

That portion of the trial court's judgment which reads as follows:

IT IS ORDERED, ADJUDGED AND DECREED, and the Court does hereby find, that the option to purchase the land and premises described herein as set forth in the Lease Agreement dated the 1st day of May, 1974, entered into by and between W. E. CURTIS, BILLY D. CURTIS and ROYCE L. McPHAIL, is null and void and of no force and effect.

is hereby modified to read as follows:

IT IS ORDERED, ADJUDGED AND DECREED, and the Court does hereby find, that the option to purchase the land and premises described herein as set forth in the Lease Agreement dated the 1st day of May, 1974, entered into by and between W. E. CURTIS, BILLY D. CURTIS and ROYCE L. McPHAIL was unenforceable prior to November 5, 1975, and was not thereafter, and is not now, enforceable without the approval of the sale by the Veteran's Land Board.

As modified, the judgment of the trial court is affirmed.

---

6. Amendment XIV, United States Constitution and Article 1, Section 19, Constitution of the State of Texas 1876.

7. Amendment XIV, United States Constitution.